949 So.2d 1215 (2007)
STATE of Louisiana
v.
Talvin WARREN.
No. 05-KK-2248.
Supreme Court of Louisiana.
February 22, 2007.
*1219 Charles C. Foti, Jr., Attorney General, J. Phil Haney, District Attorney, Walter J. Senette, Jr., Robert C. Vines, Jeffrey Jude Trosclair, Assistant District Attorneys, for Applicant.
Cecelia Ann Bonin, New Iberia, for Respondent.
JOHNSON, Justice.
The defendant, Talvin Warren, was charged by bill of information with possession of marijuana with intent to distribute in violation of LSA-R.S 40:966(A)(1). The trial court heard the motion to suppress the evidence and granted defendant's motion to suppress the evidence relative to the 12 to 15 pounds of marijuana seized from the interior of the black duffel bag. The State sought review of the trial court's ruling on the motion to suppress the evidence.
On writ, the Third Circuit upheld the trial court's granting of defendant's motion to suppress the 12 to 15 pounds of marijuana seized from the interior of the black duffel bag and denied the State's writ application. State v. Warren, 05-0871 (La. App. 3d Cir.9/2/05). We granted certiorari in this criminal case in order to determine whether the warrantless search of the black duffel bag by the police officers was objectively reasonable under the Fourth Amendment of the United States Constitution. State v. Warren, 05-2248(La.9/15/06), 936 So.2d 1251.

FACTS AND PROCEDURAL BACKGROUND
On April 20, 2003, Officer Salvador Buscaino, a seven-year veteran of the Iberia Parish Sheriff's Office narcotics unit was working a security detail at the Best Western Motel in New Iberia, Louisiana. At approximately 1:00 a.m., he observed an unknown female in a silver vehicle with Texas license plates drive in the parking lot of the Best Western. An unknown male later identified as Defendant Talvin Warren, ran toward the silver vehicle and got into the passenger side of the vehicle, but then got out and re-entered the vehicle in the driver's seat, while an unknown person exited the passenger side of the vehicle and went into room 222 in the motel.
Officer Buscaino approached the vehicle and asked defendant if everything was okay, and defendant responded that all was fine and that he was staying in room 222. The officer continued to make his security rounds and then parked his vehicle near room 222. At that time, he noticed someone in room 222 peeping out from behind the curtains watching him as he spoke with the defendant. Officer Buscaino checked and determined that the Texas license plate was registered to a rental car. With the help of the front desk clerk, Officer Buscaino learned that room 222 was registered to someone named "Mr. Ramos," who had given an Arkansas driver's license.
*1220 Officer Buscaino reported his findings to his supervisor, Sgt. Kevin Judice, and they decided to conduct a "knock and talk" investigation at room 222. At approximately 2:30 or 3:00 a.m., the two officers, accompanied by their ranking officer, Lt. Darren Denise, and Corporal Seth Pellerin, all dressed in police uniforms, knocked at the door of room 222. Defendant answered the door, and the police officers detected a strong odor of marijuana smoke coming from the room and the defendant's person. From the open doorway, one of the officers observed a small plastic baggie of what appeared to be marijuana on a bed inside the room. Based on the police's observation of the small baggie of marijuana and the smell of marijuana, the officers arrested defendant at the doorway, conducted a safety pat down of his person for weapons, cuffed his hands behind his back, and placed him seated in a chair by the doorway.
The police officers immediately entered the room and conducted a protective sweep to ascertain if any of the other occupants were on the premises, looking in the bathroom, closet, and under beds, but finding no other persons. Officer Buscaino advised defendant of his Miranda rights, and thereafter, defendant admitted to smoking a "blunt" (hand-rolled marijuana cigar) in the room earlier, and admitted that the partially-smoked remains of that "blunt" in the ashtray were his. Defendant further admitted that the small baggie of marijuana on the bed was also his.
During the officers' protective sweep of the room for other occupants, for weapons, and for any evidence that could be destroyed by defendant, the officers opened a large black duffel bag on one of the beds and emptied its contents. From that bag, two large bundles spilled forth, bound separately in white plastic and wrapped with duct tape. One of the officers cut through the white plastic, revealing a layer of mustard before the next layer of plastic packaging, which ultimately concealed 12 to 15 pounds of marijuana. Upon discovery of the bundles of marijuana, defendant did not deny possession of the black bag and its contents. The protective sweep of the room revealed that the other occupants of the room, Lawrence Edward Roan, and Juakena Ramos were not present. However, defendant informed the police officers that they were at the motel bar and would return soon. The officers and defendant waited in the room until the others returned, some two hours later. Roan was arrested. Ramos, who fled, was ultimately apprehended. The police officers did not find any weapons in the room.
The state charged defendant with possession of marijuana with intent to distribute. On April 29, 2003, over a week after his arrest and while he was incarcerated at the Iberia Parish Jail, defendant sent word to the officers that he would like to talk with them. After the police re-advised defendant of his Miranda rights, defendant offered to cooperate with them in drug investigations and told them that he brings people to a Hispanic male in Brownsville, Texas, and helps them buy large amounts of marijuana and powder cocaine. In the videotaped interview, defendant further claimed to know members of the Mexican Mafia and could supply names to the police.
Defendant filed a motion to suppress the evidence and statements, and the court conducted hearings on March 31, 2004; April 1, 2004; and October 6, 2004. Defendant testified at the hearing and admitted to possessing the small baggie of marijuana and the partially-smoked marijuana cigar in the ashtray. However, defendant denied possessing any of the luggage in the room, including the black duffel bag in *1221 question, and further claimed that the room was not his.
The trial court ruled that the officers acted reasonably in conducting a "knock and talk" investigation of defendant's motel room. In addition, the trial court found that the strong smell of marijuana surrounding defendant's room gave the officers probable cause to conduct a warrantless search for the source of that marijuana. The trial court further determined that after observing a small baggie of marijuana in plain view, the officers had probable cause to arrest defendant. However, as to the 12 to 15 pound bundles of marijuana located in the black duffel bag, the judge found no exigency to justify the warrantless search of the inside of the bag under the facts herein, since defendant was alone in the room, arrested and handcuffed with hands behind his back at the outset, positioned in a chair at the room's entrance some six feet away from the duffel bag, with two or three officers surrounding him. Consequently, the judge granted defendant's motion to suppress relative to the 12 to 15 pounds of marijuana seized from the interior of the black duffel bag, opining that while the officers remained in the motel room for an additional two hours waiting for the other occupants to return, one of the four officers could have sought a search warrant for the duffel bag. Likewise, having suppressed the evidence, the judge ruled that there was no probable cause for defendant to be charged with possession of marijuana with intent to distribute, and found probable cause only for a charge of simple possession of the small baggie of marijuana found open on the bed, and reduced defendant's bond obligation accordingly.
The court of appeal concluded and reasoned:
The burden on the State to prove that there were exigent circumstances to justify a warrantless search. LSA-C.Cr.P. art. 703(D). The duffel bag was outside the immediate area and control of defendant as defined by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685(1969). The officers had the means and time to obtain a search warrant. Therefore, the trial court did not err when it found that the warrantless search of the duffel bag, which revealed a large amount of marijuana, was an illegal search and that the evidence, which resulted from the illegal search was inadmissible.(Emphasis ours). State v. Warren, 05-0871 (La.App. 3d Cir.9/2/05)

LAW AND DISCUSSION
"Knock and Talk" is a law enforcement tactic where a police officer, who possess some information that they believe warrants further investigation, but that is insufficient to constitute probable cause for a search warrant, approach the person suspected of engaging in illegal activity at the person's residence (even knock on the front door), identify themselves as police officers, and request consent to search for the suspected illegality or illicit items. See, e.g., People v. Frohriep, 247 Mich. App. 692, 702, 637 N.W.2d 562 (2001); United States v. Hardeman, 36 F.Supp.2d 770, 777 (E.D.Mich., 1999); State v. Smith, 346 N.C. 794, 796, 488 S.E.2d 210 (1997); United States v. Zertuche-Tobias, 953 F.Supp. 803, 829 (S.D.Tex., 1996).
Knock and talk investigation "involves officers knocking on the door of a house, identifying themselves as officers, asking to talk to the occupant about a criminal complaint, and eventually requesting permission to search the house." State v. Reinier, 628 N.W.2d 460, 466 (Iowa 2001). "If successful, it allows police officers who lack probable cause to gain access to a house and conduct a search." Id. *1222 Both federal and state appellate courts which have considered the question, including the United States Court of Appeals for the Seventh Circuit, have concluded that the knock and talk procedure does not, per se, violate the Fourth Amendment. See Scott v. State, 347 Ark. 767, 67 S.W.3d 567, 575 (2002); see also United States v. Johnson, 170 F.3d 708, 720 (7th Cir.1999); United States. v. Jones, 239 F.3d 716, 720 (5th Cir.2001); Scott v. State, 366 Md. 121, 782 A.2d 862, 872-73 (2001); People v. Frohriep, supra.
"Though the `knock and talk' procedure is not automatically violative of the Fourth Amendment, it can become so." Keenom v. State, 349 Ark. 381, 80 S.W.3d 743, 747 (2002). The constitutional analysis begins with the knock on the door. Scott v. State, 366 Md. 121, 782 A.2d 862, 867 (2001). The prevailing rule is that, absent a clear expression by the owner to the contrary, police officers, in the course of their official business, are permitted to approach one's dwelling and seek permission to question an occupant. Id. at 867-68.
Louisiana jurisprudence allows the "knock and talk" approach of police. See, State v. Davenport, 32-329 (La.App.2d Cir.9/22/99), 801 So.2d 380; State v. Green, 598 So.2d 624 (La.App. 3d Cir.1992). Knocking on a door is an "age old request for permission to speak to the occupant." State v. Haywood, 00-1584 (La.App.5 Cir.3/28/01), 783 So.2d 568, quoting State v. Sanders, 374 So.2d 1186, 1188 (La.1979). When a door is opened in response to a knock, it is a consent of the occupant to confront the caller, and there is no compulsion, force or coercion involved. Id.
This case presents not the challenge to the knock and talk, but rather the question of when is it permissible to search a suitcase or sealed package within the premises after a person has been arrested under the guidelines set forth by the United States Supreme Court in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685(1969). In Chimel, the United States Supreme Court clarified the standard applicable in the "search incident to arrest" situation.
. . . When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area `within his immediate control'-construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.
In its brief, the State argues that the search of the black duffel bag on the bed of defendant's motel room was a permissible search incident to his lawful arrest, as the bag was only six feet from defendant. In the alternative, the State suggests that exigent circumstances governed the officers' need to act because three other persons had access to the motel room and though they were in the motel bar at the time of defendant's arrest, they would soon return and could have destroyed the evidence *1223 or jeopardized the officers' safety. Finally, the State posits that since defendant denied any ownership interest over the black duffel bag, he had no expectation of privacy, and thus a search of the black duffel bag was reasonable as a search of abandoned property.
The Fourth Amendment[1] prohibits both unreasonable searches and unreasonable seizures, and its protection extends to both `houses' and `effects'. Similarly, the provisions of the Louisiana Constitution Article 1, § 5 provide as follows:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
Both the United States and Louisiana constitutions prohibit unreasonable searches and seizures of constitutionally-protected locations and a warrant based upon probable cause is normally required for such a search to be conducted. The capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection has a legitimate expectation of privacy in the invaded place. Katz v. United States,[2] 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Edwards, 00-1246 (La.6/1/01), 787 So.2d 981.
The United States Supreme Court has consistently emphasized that the mandate of the Amendment requires adherence to judicial processes. See Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Only where incident to a valid arrest, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), or in `exceptional circumstances,' Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), may an exemption lie, and then the burden is on those seeking the exemption to show the need for it, McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948).
The constitutional protection provided in the Fourth Amendment also applies to hotel rooms. Hoffa v. United States, 385 U.S. 293, 301, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966); Stoner v. California, 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964). In general, courts assess the reasonableness of a Fourth Amendment seizure by balancing the interest served by the intrusion against the privacy rights of the individual subjected to the seizure. Brown v. Texas, 443 U.S. *1224 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 555, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

EXIGENT CIRCUMSTANCES
Police generally need a warrant to enter a home, but "warrantless searches will be allowed when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant." United States v. Lenoir, 318 F.3d 725, 730 (7th Cir.2003); United States v. Marshall, 157 F.3d 477, 481-82 (7th Cir.1998); United States v. Radka, 904 F.2d 357, 361 (6th Cir.1990). One such circumstance is when the police "reasonably fear[ ] for the safety of someone inside the premises." United States v. Richardson, 208 F.3d 626, 629 (7th Cir.2000). The safety of others is a particular concern when police respond to a report of a crime in progress, and, in such a situation, police judgments regarding warrantless entries "should be afforded an extra degree of deference." Reardon v. Wroan, 811 F.2d 1025, 1029 (7th Cir.1987). To justify a warrantless entry, the exigent circumstances must be known to the officers "at the time of the warrantless entry" and cannot be based on evidence discovered during the search. United States v. Rivera, 248 F.3d 677, 680-81 (7th Cir.), cert. denied, 534 U.S. 923, 122 S.Ct. 277, 151 L.Ed.2d 203 (2001); accord United States v. Arch, 7 F.3d 1300, 1304 (7th Cir.1993).
In order to justify a warrantless entry based on exigent circumstances, there must also be probable cause to enter the residence. United States v. Johnson, 9 F.3d 506, 509 (6th Cir.1993) (citing United States v. Sangineto-Miranda, 859 F.2d 1501, 1511 n. 6 (6th Cir.1988)); Steagald v. United States, 451 U.S. 204, 211, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); see also United States v. Rubin, 474 F.2d 262, 268 (3d Cir.1973) ("Probable cause to believe contraband is present is necessary to justify a warrantless search, but it alone is not sufficient . . . Mere probable cause does not provide the exigent circumstances necessary to justify a search without a warrant."). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir.1990). This determination must be made from the totality of the circumstances, based on the objective facts known to the officer at the time. United States v. Ferguson, 8 F.3d 385, 391-92 (6th Cir.1993). In determining whether sufficient exigent circumstances exist to justify the warrantless entry and search or seizure, the court must "consider the totality of the circumstances and the `inherent necessities of the situation at the time.'" Rohrig, 98 F.3d at 1511 (quoting Johnson, 9 F.3d at 508) (internal quotation marks omitted). Further, the scope of the intrusion must be circumscribed by the exigencies that justified the warrantless search. Mincey v. Arizona, supra.
In U.S. v. Coles, 437 F.3d 361(3rd Cir.2006), the Federal United States Appellate Court noted examples of exigent circumstances that included, but were not limited to hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others. United States v. Rohrig, 98 F.3d 1506, 1515 (6th Cir.1996); U.S. v. Richard, 994 F.2d 244, 247-48 (5th Cir.1993); Mincey v. Arizona, 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); see also Rubin, 474 F.2d at 268-69. In these limited situations, *1225 the need for effective law enforcement trumps the right of privacy and the requirement of a search warrant, thereby excusing an otherwise unconstitutional intrusion. Warden v. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Exigent circumstances, however, do not meet Fourth Amendment standards if the government deliberately creates them. United States v. Acosta, 965 F.2d 1248, 1254(3d Cir.1992); United States v. Duchi, 906 F.2d 1278, 1284-85 (8th Cir. 1990); United States v. Timberlake, 896 F.2d 592, 597 (D.C.Cir.1990); United States v. Thompson, 700 F.2d 944, 950 (5th Cir.1983).
The "`physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,'" and accordingly, warrantless entries are considered presumptively unreasonable. United States v. Saadeh, 61 F.3d 510, 516 (7th Cir.1995); Payton v. New York, 445 U.S. 573, 585-86, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). The relevant focus is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced agent to believe that evidence might be destroyed or removed before a warrant could be secured. Marshall, 157 F.3d at 482.
Exigent circumstances justify a warrantless entry, search, or seizure when "police officers, acting on probable cause and in good faith, reasonably believe from the totality of the circumstances that (a) evidence or contraband will imminently be destroyed or (b) the nature of the crime or character of the suspect(s) pose a risk of danger to the arresting officers or third persons." United States v. Kunkler, 679 F.2d 187, 191-192 (9th Cir.1982) (footnote omitted). The government bears the burden of showing specific and articulable facts to justify the finding of exigent circumstances. LaLonde v. County of Riverside, 204 F.3d 947, 957 (9th Cir.2000) (citing United States v. Shephard, 21 F.3d 933, 938 (9th Cir.1994)) (quoting United States v. Driver, 776 F.2d 807, 810 (9th Cir.1985)).
With the exception of a few well-delineated situations, officers must obtain a warrant from a neutral and detached magistrate prior to conducting either an arrest or a search.[3] The warrant requirement limits police discretion in determining which persons to search or seize. (See United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)) (investigatory stop must be justified by objective manifestation that the person stopped is, or is about to be, engaged in criminal activity); Carroll v. United States, supra., (officer must have probable cause for warrantless vehicle search); See e.g. State v. LaRue, 368 So.2d 1048 (La. 1979) (searches pursuant to a standard inventory search); State v. Gordon, 332 So.2d 262 (La.1976) (searches incident to a lawful arrest); State v. Wyatt, 327 So.2d 401 (La.1976) (consensual searches); State v. Jones, 315 So.2d 270 (La.1975)(searches undertaken under exigent circumstances). Absent one of the foregoing exceptions, a warrant is required because it places the crucial task of making delicate judgments and inferences from facts and circumstances in the hands of a detached and *1226 neutral magistrate judge, instead of police officers, who are engaged in the zealous pursuit of ferreting out crime. Johnson v. United States, supra.
A search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Tatum, 466 So.2d 29 (La. 1985). When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving the admissibility of any evidence seized without a warrant. LSA-C.Cr.P. art. 703(D).
In the case sub judice, Officer Buscaino testified at the motion hearing that there had been recent activity in which drug dealers came to the area, rented hotel rooms, then distributed quantities of drugs to local drug dealers from the hotel rooms. Given that background, as well as the earlier suspicious activities he observed, Officer Buscaino ran a criminal history on Juakena Ramos and learned that he had an extensive criminal record, including multiple charges for burglary, second degree battery, illegal possession of firearms, and two previous offenses of possession of a controlled dangerous substance. Further, the record indicates that the motel room was registered to Juakena Ramos. The defendant informed the officers that the two other people were with him, Lawrence Edward Roan, and Juakena Ramos, and that they were at the motel bar and would return soon. The officers were in a precarious situation not knowing exactly when the two other occupants would return to the room. At the time the black duffel bag was opened, the officers' expected Ramos and Roan could return to the room at anytime, and sought to avoid the potential of a violent confrontation that could have caused injury to the officers and the public, and/or caused the destruction of evidence. Although the two other occupants of the room did not return for two hours, there was no way to anticipate the exact length of the delay. Therefore, we find the search of the black duffel bag was permissible, based on exigent circumstances.

SEARCH INCIDENTAL TO LAWFUL ARREST
After making an arrest, an officer has the right to much more thoroughly search a defendant and his wing span, or lunge space, for weapons or evidence incident to a valid arrest. State v. Sanders, 36,941 (La.App.2d Cir.4/11/03), 842 So.2d 1260, writ denied, 03-1695 (La.5/14/04), 872 So.2d 516. This rule is justified by the need to remove any weapon the arrestee might seek to use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence. Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004); Chimel, supra.
In State v. Williams, 398 So.2d 1112(La.1981), this Court held:
When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it is reasonable for the arresting officer to conduct a prompt, warrantless "search of the arrestee's person, and the area `within his immediate control' construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." United States v. Chadwick, 433 U.S. 1, 14, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538, 550 (1977); Chimel v. California, *1227 supra; State v. Clift, 339 So.2d 755 (La.1976).
A search incident to a lawful arrest not only may be conducted without a warrant, but it may also be made whether or not there is probable cause to believe that the person arrested has a weapon or is about to destroy evidence. "The potential dangers lurking in all custodial arrests make warrantless searches of items within the `immediate control' area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved." United States v. Chadwick supra. at 2485 (dicta); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).
The federal Fifth Circuit interpreted evidence some eight feet away from the defendant to be "outside the area within [the defendant's] immediate control," and thus, the search was invalid. See United States v. Johnson, 18 F.3d 69, 73 (5th Cir.1994) (search by four officers of defendant's briefcase, yielding checkbooks and other evidence supporting the city employee's fraudulent loans and misappropriations of grants, while defendant sat unrestrained at his desk some eight feet away showed "callous disregard for fourth amendment"). On rehearing, the Fifth Circuit upheld its previous ruling, but described the distance between defendant Johnson and the open briefcase as only "five to six feet." See United States v. Johnson, supra., n. 3. See also United States v. Morales, 923 F.2d 621, 626-27 (8th Cir.1991)(warrantless search of bags valid as incident to arrest when contemporaneous with arrest, arrestee held bags as officers approached, and was approximately three feet away and not handcuffed during search).
Even if the arrestee has been handcuffed, "courts are still inclined to find that he might have been able to get at a nearby case, at least if his hands were cuffed in front of him rather than behind him." See 3 Wayne R. LaFave, Search and Seizure, § 5.5(a), p. 212 (4th ed.2004); see also United States v. Nohara, 3 F.3d 1239, 1243 (9th Cir.1993)(warrantless search of bag valid as incident to arrest when contemporaneous with arrest and arrestee held bag as officers approached, even though arrestee handcuffed during search).
Similarly, in United States v. Bennett, supra, the court of appeals upheld as reasonable the warrantless search of the motel room registered to persons ultimately convicted of robbing numerous banks in the Chicago area. Upon observing a car, parked at a motel, which fit the description of the getaway car in several of the robberies, an officer ascertained that the car was registered to the occupants in room 120. After calling for back-up, the officers knocked on the door of room 120, and a voice with a southern accent, asked who was at the door. Eyewitnesses had described one of the robbers as having a southern accent. The officer identified himself and indicated that he wanted to speak to them about their car. When defendant Bennett exited the room, the officer immediately recognized him from bank surveillance photos, and arrested him in the hallway. The officers learned from Bennett that Steven Keith was inside the room. When the officers entered room 120, they observed a large revolver in an open suitcase near the front door, and Keith in the nearby bed. The officers also recognized Keith from the bank surveillance photos and placed him under arrest. Keith admitted that the revolver and the grey suitcase were his. The officers searched the grey suitcase and a black suitcase in which they found a loaded .357 magnum handgun and a loaded 12-gauge sawed-off shotgun. They also *1228 found a loaded .38 caliber snub-nose revolver under the mattress of one of the beds, and a light colored reddish-brown wig in an blue nylon bag. Bennett, 908 F.2d at 191. Following their convictions on numerous counts stemming from their bank robbery spree, Bennett and Keith challenged the district court's decision to deny their motions to suppress the evidence seized during the officers' warrantless search of the luggage in their motel room in violation of their Fourth Amendment rights. The district court determined the search was reasonable based on the exigent circumstances confronting the officers, and further determined that the officers properly seized the evidence under the plain view and search incident to arrest exceptions to the warrant requirement. Id. at 192.
The Federal United States Seventh Circuit deemed the officers' subsequent search of the defendants' luggage was justified under Chimel, even under circumstances where both defendants were handcuffed and placed against the wall of the room following their arrest, crediting the testimony of one officer who testified that the officers conducted the search because "they feared that the defendants would gain access to the weapons, or that other accomplices who knew where the weapons were would storm the room." Id. at 193. Moreover, the officers were previously aware that the perpetrators of the bank robberies had used several different weapons, and thereafter observed a single revolver in plain view. The Federal United States Seventh Circuit discounted the defendants' claim that they were handcuffed and thus not a threat during the search for weapons, reasoning that "[c]ustodial arrests are often dangerous; the police must act decisively and cannot be expected to make punctilious judgments regarding what is within and what is just beyond the arrestee's grasp." Id. (quoting United States v. Queen, 847 F.2d 346, 353 (7th Cir.1988) and U.S. v. Lyons, 706 F.2d 321, 330 (D.C.Cir.1983)); See, e.g., United States v. Mason, 523 F.2d 1122, 1125-26 (D.C.Cir.1975) (sustaining search of a closet "three or four feet" away from a standing, handcuffed defendant who had attempted to obtain a jacket hanging therein). But the touchstone remains the justification articulated in Chimel. Thus, considering the Supreme Court's admonition that "[e]very arrest must be presumed to present a risk of danger to the arresting officer," Washington v. Chrisman, 455 U.S. 1, 7, 102 S.Ct. 812, 817, 70 L.Ed.2d 778 (1982), searches have been upheld even when hindsight might suggest that the likelihood of the defendant reaching the area in question was slight. Queen, 847 F.2d at 353.
Even when the contraband seized is not as inherently dangerous as the weapons seized in Bennett, at least one state court has upheld the warrantless search and seizure of drugs from luggage after the defendant had been arrested and handcuffed. See State v. Galpin, 01-0445 (11/25/03), 318 Mont. 318, 80 P.3d 1207, 1217-18. Defendant's coat and duffel "handcuffed and placed on his knees," which the court determined, placed him "in even closer proximity to his coat and duffel bag" and "a man leaning his body and reaching, even with his hands in cuffs, could potentially reach the articles within that range."
In the present scenario, defendant argues that his hands were cuffed behind him, and in such cases, a warrantless search incident to arrest is rarely justified because most any location is outside the area of his control. See, e.g., United States v. Jones, 475 F.2d 723 (5th Cir. 1973), in which the court observed:
[I]f defendant's hands were cuffed in front and he were in close proximity to *1229 the suitcase, then the search here could probably be justified under Chimel. Even with the presence of numerous FBI agents in the room, we cannot say that it would be unreasonable to believe that Jones might attempt to lay his hands on a weapon located inside the suitcase. But if defendant's hands were cuffed behind him in such a manner that he was denied access to the suitcase, then the search could not be upheld under Chimel because the suitcase would not be within his immediate control or within an area from which he might gain possession of a weapon or destructible evidence. Jones, 475 F.2d at 728.
Guns and drugs frequently go hand-in-hand, see United States v. Trullo, 809 F.2d 108, 113 (1st Cir.1987) ("[T]o substantial dealers in narcotics, firearms are as much tools of the trade as are most common recognized articles of drug paraphernalia.") (internal citations omitted). The officers in the instant case acted reasonably in assuming as much and in conducting a protective sweep for weapons. Indeed, the officers testified that they were looking for weapons when they searched the black duffel bag. Defendant's hands were cuffed behind his back, and he was seated at the doorway to the motel room, some six feet away from the bag. The District of Columbia Circuit noted that the area searched for a weapon must be "conceivably accessible to the arrestee-assuming that he was neither `an acrobat [nor] a Houdini.'" Lyons, 706 F.2d at 330 (quoting United States v. Mapp, 476 F.2d 67, 80 (2d Cir.1973)); accord United States v. Scios, 590 F.2d 956, 964 n. 15 (D.C.Cir. 1978) (en banc); United States v. Griffith, 537 F.2d 900, 904 (7th Cir.1976).
In Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905(2004), the United States Supreme Court, held that the Fourth Amendment allows an officer to search vehicle's passenger compartment as a contemporaneous incident of arrest, even when officer does not make contact until the person arrested has already left the vehicle.[4]
Similarly, in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court, held that: when a policeman has made a lawful custodial arrest of the occupants of *1230 an automobile he may, as a contemporaneous incident of that arrest, search the passenger compartment of the vehicle and may also examine the contents of any container found within the passenger compartment and such "container", i.e., an object capable of holding another object, may be searched whether it is open or closed, and where defendant, an automobile occupant, was subject of lawful custodial arrest on charge of possessing marijuana, search of defendant's jacket, which was found inside passenger compartment immediately following arrest, was incident to lawful custodial arrest, notwithstanding that officer unzipped pockets and discovered cocaine.
Here, it is undisputed that the defendant admitted to the police officer that he had smoked a "blunt" (hand-rolled marijuana cigar marijuana), and admitted that the partially-smoked remains of that "blunt" in the ashtray was his at the time of the custodial arrest. It is indisputable this was a lawful arrest of the defendant. However, the defendant argues that the duffel bag was outside the scope of the permissible search area, i.e. it was neither on his person nor within an area under his immediate control. We disagree. Although the chance of the defendant freeing himself to imperil the officers or to destroy evidence was remote. However, the officers could not take the chance that the black duffel bag contained weapons, which the defendant could use to arm himself; or more importantly, the two other occupants could have returned to the room at anytime, potentially armed themselves with weapons and attempted to liberate the defendant or destroy the evidence. A custodial arrest is fluid and "[t]he danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty," Robinson, supra, at 234-235, and n. 5, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (emphasis added). See Washington v. Chrisman, 455 U.S. 1, 7, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982). Thus, we find that the search of the black duffel was incidental to a lawful arrest of the defendant.
Based on the totality of these circumstances, the trial court's decision to grant defendant's motion to suppress the bundles of marijuana seized from the black duffel bag was in error. Thus, we find the court of appeal erred in affirming the trial court's ruling granting the defendant's motion to suppress the evidence. Accordingly, the decisions of the lower courts are reversed and this matter is remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
CALOGERO, C.J., concurs and assigns reasons.
KIMBALL, J., dissents for the legal reasons cited by Traylor.
VICTORY, J., concurs in the result.
TRAYLOR, J., dissents and assigns reasons.
WEIMER, J., concurs in the result and assigns reasons.
CALOGERO, Chief Justice, concurring.
I respectfully concur in the portion of the majority opinion holding exigent circumstances permitted a warrantless search of the black duffel bag.
TRAYLOR, Justice, dissenting.
The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly *1231 describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Similarly, the Louisiana Constitution protects a citizen's right to privacy:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
A search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330, see Coolidge v. New Hampshire, 403 U.S. 443, 454-455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971). In this case, the state contends that the officers were authorized to conduct a warrantless search of a black duffel bag as a search incident to the defendant's arrest and due to exigent circumstances.
Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) delineates both the justification for, and the scope of, a search incident to arrest:
When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. Chimel, 395 U.S. at 762-763, 89 S.Ct. at 2040.
Chimel found ample justification "for a search of the arrestee's person and the area `within his immediate control'construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Id., 395 U.S. at 763, 89 S.Ct at 2040.
Chimel also answered the question presented here, that is, whether a warrantless search of a closed bag on a bed is reasonable as a search incident to arrest when the defendant is already arrested, with his hands hand-cuffed behind his back, sitting in a chair 6-10 feet from the bed, while guarded by four police officers. While Chimel found justification for a warrantless search of the arrestee's person and the area within his immediate control, it also held
[t]here is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs-or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. Chimel, 395 U.S. at 763, 89 S.Ct. at 2040 (emphasis added).
The search which occurred here could not have been justified as a search incident to arrest. In fact, the search of the closed bag in the same room as, but not within the immediate control of, a defendant, was the Supreme Court's example of an unjustified, warrantless search in the very *1232 case which delineated this exception to the warrant requirement. Any other reading or understanding of this express statement is, I believe, impermissibly result-oriented.
I believe that the majority errs in finding this warrantless search to be justified as a search incident to arrest by confusing two divergent principles expressed by the Supreme Court. After Chimel, the Supreme Court became faced with the problem of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants. In New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court established a "workable rule," to be used only in the category of cases involving automobile searches. Belton, 453 U.S. at 460, 101 S.Ct. at 2864. In Belton, the Supreme Court held that
when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. . . . Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. Belton, 453 U.S. at 460-461, 101 S.Ct. at 2864 (internal citations omitted).
The Supreme Court, in Belton, was careful to specifically limit this rule to automobile searches. The Supreme Court stated that "[o]ur holding today does no more than determine the meaning of Chimel's principles in this particular and problematic content. It in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests." Belton, 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3 (emphasis added). Thus, the majority engrafts upon the search of a house or hotel room the rules applicable only to automobile searches. The warrantless search of the black duffel bag cannot be justified as a search incident to arrest.
Nor can the warrantless search be justified by exigent circumstances requiring the officers to immediately determine the contents of the bag. Exigent circumstances have been described as an "emergency or dangerous situation,"[1] and as circumstances "in which police action literally must be `now or never' to preserve the evidence of the crime."[2] In addition, exigent circumstances exist when an officer's life or the lives of others are in danger. "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 298-299, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967). However, "[a]bsent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done . . . so that an objective mind might weigh the need to invade [the citizen's] privacy in order to enforce the law." McDonald v. United States, 335 U.S. 451, 455, 69 S.Ct. 191, 93 L.Ed. 153 (1948).
*1233 Under the facts of the present case, I find no exigent circumstances existed to justify the search of the closed duffel bag positioned on the bed 6-10 feet from the arrested, handcuffed and guarded defendant. Although the majority and concurrences discuss the impending return of the room's other occupants as a basis for exigency, it is clear on this record that the officers, after conducting a cursory sweep of the room for persons and/or weapons, had complete and utter control of the room from the minute they entered.
As a former police officer, I am reluctant to dissent because I have been in the same situations as the officers in the instant case. I understand the dangers present in performing police work and have nothing but the highest respect for officers of the law. Police officers, as the enforcers of our law, have, more than anyone, the responsibility to obey the law. I hasten to point out that I believe the officers here were completely above board in their actions and trying their best to comply with the requirements of law. However, the Supreme Court has established narrow exceptions to the warrant requirement which must be followed.
Where exigent circumstances truly exist, or where a search is properly made incident to arrest, I will uphold a warrantless search commensurate in scope with the exception which justifies the search. But the facts of this case are as they are, and not as we would wish them; and the law is the law. Because I believe that the court today unjustifiably departs from well-settled constitutional principles, I respectfully dissent.
WEIMER, J., concurring.
I respectfully concur in the majority opinion. The facts of this case exhibit aspects of three distinct and well-recognized exceptions to the warrant requirement for a police search. Those exceptions are: 1) search incident to a lawful arrest;[1] 2) search of abandoned property;[2] and 3) exigent circumstances. A review of the record in this matter discloses the existence of exigent circumstances allowing the warrantless search of the duffel bag. Thus, it is unnecessary to determine whether any other exceptions are applicable.[3]
*1234 Exigent circumstances are exceptional circumstances which, when coupled with probable cause, justify an entry into a "protected" area that, without those exceptional circumstances, would be unlawful. State v. Hathaway, 411 So.2d 1074, 1079 (La.1982). See also, Roaden v. Kentucky, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973) ("Where there are exigent circumstances in which police action literally must be `now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation.") A warrantless search of a protected item, such as the duffel bag, is allowed if an emergency exists that justifies immediate action by police with no opportunity to obtain a warrant. This court has recognized several categories of exigent circumstances, including escape of defendant, avoidance of possible violent confrontation that could cause injury to the officers and the public, and destruction of evidence. Hathaway, 411 So.2d at 1079-1080. Nevertheless, a warrantless search must be strictly circumscribed by the exigencies which justify its initiation. State v. White, 399 So.2d 172, 176 (La. 1981). Regarding exigent circumstances necessary to justify a warrantless intrusion to "secure" premises so as to avoid the destruction of evidence, the following factors are pertinent: 1) the degree of urgency involved and the amount of time needed to secure a warrant; 2) a reasonable belief that contraband is about to be removed; 3) the possibility of danger to the officers guarding the site while a warrant is sought; 4) information indicating the possessors of the contraband are aware the police are on their trail; and 5) the ready destructibility of the contraband. United States v. Riley, 968 F.2d 422, 425 (5th Cir.1992).
The justification for the search of the duffel bag occurred when the police officers were confronted with a situation which necessitated prompt action. The officers were met at the door by defendant, who was engaged in a criminal act, smoking marijuana. The room in which the defendant was engaging in criminal activity was not registered in his name. The police officers were compelled to act promptly because other persons had access to the motel room, and according to defendant, those persons would soon return, at which time officer safety could be jeopardized or evidence destroyed. The duffel bag was of sufficient size and weight to contain weapons. The officers testified they opened the bag in an effort to determine if weapons were present. It was during the officers' protective sweep of the room for other occupants, weapons, and any evidence that could be destroyed, that the officers opened and emptied the large, black duffel bag conspicuously resting on one of the beds.
The lower courts were critical of the officers for not leaving the motel to procure a warrant. However, the officers should not be expected to surrender their numerical superiority and thus put themselves at risk. The police had already uncovered the fact that Ramos had a lengthy criminal record, which included drug offenses and crimes of violence.[4] Although *1235 the defendant's confederates did not return for two hours, the officers initially were advised they would return soon. Thus, at the time the bag was opened, the officer's expected Ramos and others to return shortly.[5]
Given the totality of the circumstances, I do not find it necessary to apply the exclusionary rule. I would reverse the lower courts and find the search of the duffel bag permissible based on exigent circumstances facing the officers.[6]
NOTES
[1] The Fourth Amendment provides: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. Amend. IV.
[2] In Katz, supra., The United States Supreme stated that: Probable cause exists when "the facts and circumstances within iii [the officers'] knowledge and of which they had iii trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).
[3] The United States Supreme court concluded that probable cause exists when "the facts and circumstances within iii [the officers'] knowledge and of which they had iii trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Brinegar v. United States, supra., (quoting Carroll v. United States, supra.).
[4] In Thornton, a police officer who was in uniform, but driving an unmarked police car, first noticed Thornton when he slowed down so as to avoid driving next to the officer. The officer suspected that Thornton knew he was a police officer and for some reason did not want to pull next to him. The Officer suspicions aroused, so he pulled off onto a side street and Thornton passed him. After Thornton passed the officer, he ran a check on Thornton's license tags, which revealed that the tags had been issued to a 1982 Chevy two-door and not to a Lincoln Town Car, the model of car Thornton was driving. Before the officer had an opportunity to pull him over, Thornton drove into a parking lot, parked, and got out of the vehicle. The officer pulled in behind him, parked the patrol car, and approached Thornton, and asked him for his driver's license. The officer informed him that his license tags did not match the vehicle that he was driving. Thornton appeared nervous. He began rambling and licking his lips; he was sweating. Concerned for his safety, the officer asked Thornton if he had any narcotics or weapons on him or in his vehicle. Thornton answered no. The officer then asked Thornton if he could pat him down, to which he agreed. The officer felt a bulge in Thornton's left front pocket and again asked him if he had any illegal narcotics on him. This time Thornton stated that he did, and he reached into his pocket and pulled out two individual bags, one containing three bags of marijuana and the other containing a large amount of crack cocaine. The officer handcuffed Thornton, informed him that he was under arrest, and placed him in the back seat of the patrol car. The officer then searched Thornton's vehicle and found a BryCo 9-millimeter handgun under the driver's seat.
[1] Payton v. New York, 445 U.S. 573, 583, 100 S.Ct. 1371, 1378, 63 L.Ed.2d 639 (1980).
[2] Roaden v. Kentucky, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973).
[1] It is indisputable that there was a lawful arrest of defendant in light of his admissions to police when they were in the motel room that he had smoked marijuana. However, the defense argues that the duffel bag was outside the scope of a permissible search area; it was neither on his person nor within an area under his immediate control. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). But see Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), which expanded the right to search incident to an arrest if a vehicle is involved.
[2] The State's argument regarding abandonment is twofold. First, the State argues defendant abandoned the duffel bag when he denied ownership of it. Second, in response to the argument that defendant is allowed, pursuant to La. Const. art. I, § 5, to rely on Ramos's rights to be free of unreasonable searches and seizures, the State urges Ramos abandoned the duffel bag when he fled from the motel upon seeing the police officers there, without knowledge that the bag had been opened. Although one cannot overlook the fact that the owner of the bag abandoned the bag, sequentially, the search occurred prior to the abandonment.
[3] I note the exclusionary rule is not federally mandated in this context, because the violation of a third party's rights cannot be asserted by an adversely affected defendant pursuant to Fourth Amendment jurisprudence, and the exclusionary rule is not expressly a part of the text of Article I, § 5 of the Louisiana Constitution. See State v. Stephens, 40,343, p. 10 (La.App. 2 Cir. 12/14/05), 917 So.2d 667, 675, writ denied, 06-0441 (La.9/22/06), 937 So.2d 376. I question whether the facts of this case require the automatic application of the exclusionary rule without balancing the benefits of applying the rule. United States v. Leon, 468 U.S. 897, 907-908, 104 S.Ct. 3412-3413, 3405, 82 L.Ed.2d 677 (1984).
[4] As the majority notes, guns and drugs frequently go hand-in-hand. See United States v. Trullo, 809 F.2d 108, 113 (1st Cir.1987), cert. denied, 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987), quoting United States v. Oates, 560 F.2d 45, 62 (2nd Cir.1977) ("[T]o substantial dealers in narcotics, firearms are as much tools of the trade as are most common recognized articles of drug paraphernalia.")
[5] In United States v. Bennett, 908 F.2d 189 (7th Cir.1990), the Court of Appeals upheld as reasonable the warrantless search of a motel room registered to persons ultimately convicted of robbing numerous banks in the Chicago area, which search uncovered numerous weapons. The court deemed the officers' subsequent search of the defendants' luggage was justified under Chimel, even under circumstances where both defendants were handcuffed and placed against the wall of the room following their arrest. The officers testified they feared defendants would gain access to the weapons, or that other accomplices who knew where the weapons were would storm the room. Id., 908 F.2d at 193. The Seventh Circuit discounted the defendants' claim that they were handcuffed and thus not a threat during the search for weapons; the court reasoned that "[c]ustodial arrests are often dangerous; the police must act decisively and cannot be expected to make punctilious judgments regarding what is within and what is just beyond the arrestee's grasp." Id., quoting United States v. Queen, 847 F.2d 346 (7th Cir.1988) and U.S. v. Lyons, 706 F.2d 321, 330 (D.C.Cir.1983). The Supreme Court has admonished in Washington v. Chrisman, 455 U.S. 1, 7, 102 S.Ct. 812, 817, 70 L.Ed.2d 778 (1982), that "[e]very arrest must be presumed to present a risk of danger to the arresting officer," and searches have been upheld even when hindsight might suggest the defendant's reaching the area in question was slight. United States v. Queen, 847 F.2d 346, 353 (7th Cir.1988).

Even when the contraband seized is not as inherently dangerous as the weapons seized in Bennett, a warrantless search and seizure of drugs from luggage after the defendant had been arrested and handcuffed has been upheld, for "safety reasons." See State v. Galpin, 01-0445 (11/25/03), 318 Mont. 318, 80 P.3d 1207, 1217-18 (The Montana Supreme Court recognized an exigent circumstance in that the officers suspected Galpin of manufacturing methamphetamine, which manufacture involved highly toxic and potentially explosive chemicals.)
[6] Alternatively, the defendant complains about the use of the so-called "knock and talk" investigation. This court has previously upheld the legitimacy of the "knock and talk" investigation. See State v. Sanders, 374 So.2d 1186, 1189 (La.1979) (Knocking at the door violated no right of privacy; that single action by police did not infringe on defendant's "right to be let alone." In this country, in the absence of signs or warning, customarily a residence may be approached and the occupants summoned to the door by knocking.) See also, State v. Haywood, 00-1584, p. 7 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 575-576 (An occupant of a motel room is free to refuse to open the door or to slam it shut once opened; the occupant's freedom of movement is not infringed upon by police merely knocking on the door. Reasonable suspicion of criminal activity is not required for police to knock on a door and such knocking does not constitute an investigatory stop.)

Although the use of a "knock and talk" investigatory tool at 2:00 a.m. may be unreasonable in another set of circumstances, in this matter the defendant obviously was awake because he was smoking marijuana. Additionally, there had been other activity in the motel room immediately prior to the police officers knocking on the door; the room was rented to an individual with a lengthy criminal record involving violence, drugs, and weapons; and the police were aware of a series of prior incidents in which drugs were dispensed from motels. The trial court specifically found that the "knock and talk" investigation did not violate the constitutional rights of the defendant.