CRAIN, J.
| ¡¿Defendant, Dontrell Derrell Robertson, pled guilty under State v. Crosby, 338 So.2d 584 (La.1976), to charges of possession of a firearm by a convicted felon and obstruction of justice. He now appeals, challenging the trial court’s denial of his motion to suppress the physical evidence against him. We affirm the convictions and sentences and remand with instructions.
FACTS
On the night of October 22, 2013, Lieutenant Dallas Bookenberger and other officers with the Terrebonne Parish Sheriffs Office were patrolling a known high-crime area and observed defendant and another man in a parking lot, standing near the passenger side of a white Jeep Cherokee. Upon noticing the patrol vehicle, defendant and the other man appeared to be startled and began moving away from the Cherokee. When the officers exited the patrol vehicle, defendant began running across the parking lot toward a barbershop across Main Street. Lieutenant Bookenberger 'chased defendant and saw him disappear through a chain-link fence into an unlit grassy area behind the residence. Secohds later, defendant reappeared, walking casually as if nothing had happened. Defendant was arrested for resisting an officer, and Lieutenant Booken-berger proceeded into the grassy area where defendant had disappeared, and observed a .38 caliber pistol, lying in the open on the ground. After it was discovered that defendant was a convicted felon, he was charged with possession of a firearm by a convicted felon and obstruction of justice.
Defendant filed a motion to suppress the physical evidence against him, claiming that the pistol was seized during an illegal, warrantless search. The trial court determined that the officers had a right to detain and question defendant based on their reasonable suspicion of criminal activity and that Lieutenant Bookenberger’s entry into the grassy area where the pistol was discovered was | ¡justified by exigent circumstances. ' After the trial court denied defendant’s motion to suppress the physical evidence obtained during the war-rantless search, the defendant entered a Crosby plea, preserving his right to seek review of the trial court’s ruling on the motion to suppress.
DISCUSSION
On appeal, defendant argues there were no exigent circumstances to justify the warrantless search, and the evidence seized without a warrant should have been suppressed.
The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution protect people against unreasonable searches and seizures, which protection extends to the cur-tilage of a home. See Oliver v. U.S., 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984); State v. Brisban, 00-3437 (La.2/26/02), 809 So.2d 923, 928. A search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure was justified by one of the narrow exceptions to the warrant requirement, such as the existence of exigent circumstances. See State v. Hathaway, 411 So.2d 1074, 1079 (La.1982); State v. Aucoin, 613 So.2d 206, 208 (La.App. 1 Cir.1992). Exigent circumstances are ex *453 ceptional circumstances which, when coupled with probable cause, justify an entry into a “protected”, area that, without those exceptional circumstances, would be unlawful. Hathaway, 411 So.2d at 1079. The United States Supreme Court has defined “exigent circumstances” as “a plausible claim of specially pressing or urgent law enforcement need.” Illinois v. McArthur, 531 U.S. 326, 331, 121 S.Ct. 946, 950, 148 L.Ed.2d 838 (2001). Exigent circumstances may arise from the need to prevent the offender’s escape, minimize the possibility of a violent confrontation which could cause injury to the officers and the public, and preserve evidence from destruction or concealment. Brisban, 809 So.2d at 927-28.
14Any person adversely affected by an illegal search or seizure shall have standing to raise its illegality in the appropriate court. La. Const, art. I, § 5. It is the State’s burden to show specific and articulable facts to justify the finding of exigent circumstances and to prove the admissibility of any evidence seized without a warrant. See La. Code Crim. Pro. art. 703D; State v. Warren, 05-2248 (La.2/22/07), 949 So.2d 1215, 1225-26. In determining whether sufficient exigent circumstances exist to justify the warrantless entry and search or seizure, the court must consider the totality of the circumstances and the inherent necessities of the situation at the time. Further, the scope of the intrusion must be circumscribed by the exigencies that justified the warrant-less search. Warren, 949 So.2d at 1224.
At the suppression hearing, the State presented the testimony of Lieutenant Bookenberger, who had been with the Ter-rebonne Parish Sheriffs Office for twelve years, and had been a narcotics officer for seven of those years. He explained that one way narcotics officers infiltrate drug •activity in the parish is to patrol high-crime areas in two-to-three man teams looking for suspicious activity, such as subjects hanging around the streets who react to the appearance of law enforcement by discarding something or fleeing. Lieutenant Bookenberger described the entire area where defendant was first seen and then arrested as a high-crime, violent area where narcotics such as marijuana, crack, and heroin were readily available, and where those distributing the narcotics were known to carry firearms.
On the night in question, Lieutenant Bookenberger and the other officers were patrolling the area conducting street-level drug enforcement. At approximately 8:15 p.m., their vehicle entered the parking lot of an abandoned business. Lieutenant Bookenberger explained that on a number of occasions, they had sent informants into that parking lot in a vehicle and pedestrians would 15approach to buy narcotics. As the officers proceeded through the parking lot, they observed the Cherokee and defendant and another man standing near its passenger side.
Lieutenant Bookenberger described defendant and the other man as looking “startled” upon seeing the patrol unit and having a “surprised look.” Defendant immediately began walking away from the Cherokee as the officers patrolled past. When the patrol unit’s blue lights were activated, defendant began quickly walking away and, when the officers exited the patrol unit, he began running in the direction of Main Street, which bordered the parking lot. Defendant continued running, despite Lieutenant Bookenberger’s shouting, “stop, police, stop.”
Lieutenant Bookenberger testified that he chased defendant across the football-field length parking lot and across Main Street. Defendant was almost hit by a car as he ran across Main Street, but Lieutenant Bookenberger did not think defendant *454 even realized that this had happened, so intent was he on evading police. Once across Main Street, Lieutenant Booken-berger observed defendant enter a narrow carport that connected a residence and barbershop. With Lieutenant Bookenber-ger still in pursuit, defendant ran through the opening in the chain-link fence at the end of the carport, turned into the unlit grassy area, and disappeared from Lieutenant Bookenberger’s sight. Lieutenant Bookenberger slowed and drew his weapon, then, approximately three to five seconds after losing sight of defendant, observed defendant casually walking back through the same opening in the fence as if nothing had happened.
After defendant was arrested for resisting an officer, Lieutenant Bookenberger traced the path defendant had taken through the fence and into the grassy area. Approximately ten to fifteen feet from the spot where Lieutenant Bookenberger lost sight of defendant and where defendant, seconds later, reappeared, Lieutenant Bookenberger observed a chrome, .38 caliber pistol with a | [Jblack grip lying out in the open on the ground. This pistol was loaded with a magazine of six live rounds, although no round was racked into the chamber.
Defendant presented the testimony of his sister, Latoya Peters, who testified that, on the night in question, she was living at the residence next to the barbershop with her mother and witnessed defendant’s arrest. She disputed Lieutenant Bookenberger’s account, testifying that the officers were arresting someone else in the parking lot when her brother exited a Dollar Store and walked to the front yard of her residence, where he joined a group of approximately twelve people. She testified that Lieutenant Bookenberger “just grabbed” and arrested defendant in the front yard, then proceeded to search the backyard. In addition to the twelve people in the front yard, she described people from nearby apartments coming over to see what was happening. She denied that defendant entered the backyard before Lieutenant Bookenberger entered it to search Peters further disputed Lieutenant. Bookenberger’s testimony regarding the location where the pistol was recovered, claiming that he had to walk across the entire length of the property to reach the back corner of the yard before discovering the weapon.
Lieutenant Bookenberger explained that, based on his experience, it is common for a subject to flee and discard contraband while out of sight of law enforcement, believing that they will not be charged with a crime. He testified that he was “absolutely” concerned about contraband having been discarded in the grassy area where defendant had briefly disappeared, particularly in light of people in the area, and that harm could come to someone else. He acknowledged that the |7pistol was discovered in a fenced-in yard, and that he did not obtain a warrant or the property owner’s consent to search the area.[1]
A trial court’s decision relative to the suppression of evidence is entitled to great *455 weight and will not be set aside unless there has been an abuse of discretion. State v. Thompson, 11-0915 (La.5/8/12), 93 So.3d 553, 563. Findings of fact based on the weight of the testimony and credibility of the witnesses are entitled to great deference and may not be overturned unless there is no evidence to support them. The trial court’s legal findings are reviewed de novo. Id.
In making its factual findings and denying the motion to suppress, the trial court obviously credited the testimony of Lieutenant Bookenberger over that of Peters. The trial court noted Lieutenant Booken-berger’s observation that defendant was in a high-crime area engaging in behavior consistent with drug distribution. The trial court cited those observations, combined with defendant’s flight, as reasons supporting the reasonable suspicion to stop defendant. The trial court then spoke of the change in defendant’s behavior subsequent to his brief disappearance, noting that defendant went from fleeing Lieutenant Bookenberger to cooperating with him. According to the trial court, this suddenly compliant behavior gave rise to a reasonable conclusion that defendant might have dispossessed himself of any contraband he had previously possessed.
With respect to the warrantless search itself, the trial court found that it was not until the pistol was recovered that the homeowner “apparently objected” to the police presence in the backyard. Further, the trial court found that the backyard was a dog-legged configuration extending to an area beyond the rear of a ^neighboring commercial establishment. Because of the commercial nature of the nearby establishment, the number of witnesses in the area, and the uncertainty regarding the nature of the potential contraband, the trial court concluded that it was important for Lieutenant Bookenberger to act immediately in attempting to secure any contraband in the area. Simply put, the trial court found that exigent circumstances supported Lieutenant Bookenberger’s actions, thereby rendering the warrantless search and seizure reasonable.
Based on the record as a whole, the trial court did not err or abuse its discretion in denying defendant’s motion to suppress. Under the totality of the circumstances, including Lieutenant Bookenberger’s vast experience in dealing with drug activity in the area, and his observation of defendant in the parking lot of an abandoned building standing near a vehicle at night, appearing startled by and nervous about the presence of police, then fleeing, Lieutenant Bookenberger had a reasonable suspicion supported by articulable facts that criminal activity may have been occurring, so as to justify an investigatory stop. See State v. Morgan, 09-2352 (La.3/15/11), 59 So.3d 403, 406. Lieutenant Bookenberger described defendant as almost being hit by a car while fleeing across Main Street, but questioned whether defendant was even aware that this had occurred, showing defendant’s level of fear. All of this ripened into probable cause to arrest defendant for resisting an officer. See La. R.S. 14:108.[2]
Additionally, the State proved that exceptional circumstances existed to justify a warrantless search of the yard where the defendant disappeared. Lieutenant Bookenberger described the defendant as fleeing from the police so intently that he was almost hit by a car, disappearing through a fence, then, seconds later, reappearing and walking toward him, acting as *456 if nothing had occurred. Considering his prior experience and defendant’s actions, Lieutenant 19Bookenberger reasonably believed that defendant had disposed of something in the grassy area. Moreover, both Lieutenant Bookenberger and Peters testified that by that time, many bystanders were present in the area.
The totality of the circumstances and the inherent necessities of the situation at the time amounted to sufficient exigent circumstances to justify Lieutenant Bookenberger’s warrantless entry into the yard.[3] Furthermore, the scope of his intrusion was circumscribed by the exigencies that justified the warrantless search. Cf. Warren, 949 So.2d at 1224. Although defendant contends that Lieutenant Book-enberger could have used his accompanying officers to secure the area while he applied for a search warrant, “[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others.” Warden v. Hayden, 387 U.S. 294, 298-99, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967). Swift action was the only way that Lieutenant Bookenberger could ensure that defendant was the only person present in the yard and that the police had control of any contraband or evidence that might have been destroyed or weapons that might have been used against them.
This assignment of error is without merit.
REVIEW FOR ERROR
Pursuant to Louisiana Code of Criminal Procedure article 920, this court routinely conducts a review for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. After pleading guilty under Crosby to counts of possession of a firearm by a convicted felon and obstruction of justice, the defendant was sentenced to concurrent terms of fifteen |inyears of imprisonment at hard labor. Defendant’s sentence for possession of a firearm by a convicted felon was ordered to be served without benefit of probation, parole, or suspension of sentence, but the mandatory fine of not less than one thousand dollars nor more than five thousand dollars was not imposed. See La. R.S. 14:95.1(B).
Under Louisiana Code of Criminal Procedure article 890.1, a trial court possesses the authority to depart from mandatory sentencing terms by agreement of all parties. The record reflects that the sentence, absent the fine, was imposed as a result of an agreement reached by defense counsel, the prosecutor, and the court. Accordingly, we affirm the defendant’s convictions and sentences, but remand this matter to the trial court with instructions that it issue a new commitment order specifying that defendant’s sentence was imposed under the authority of Article 890.1. See La. Code Crim. Pro. art. 890.1(E); State v. Kondylis, 14-0196 (La.10/3/14), 149 So.3d 1210.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.
McDONALD, J., concurs and assigns reasons.

. Lieutenant Bookenberger explained that as the evidence was being collected, a woman (who the defendant identifies as his mother in his appellate brief) came out of a door under the carport and asked what they were doing in her yard. He further explained that the woman allowed them to continue their investigation after being told about the pistol. In contrast, Peters testified that when her mother came outside and asked what the officers were doing in her yard, the officers told her that, if she did not like it, she should call a congressman or a senator. She believed that her mother did have a problem with the officers in her yard, but they did not seem to care, and in her opinion, her mother did not consent to the search.

. Under Louisiana Revised Statute 14:108, resisting an officer includes the intentional opposition or resistance to a lawful detention.

. While the angles of the photographs make it difficult to assess whether the yard of the residence was completely fenced or shared with a commercial establishment, we assume for the sake of our analysis that the grassy area where the pistol was found fell within the protected curtilage of the residence.