# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 22-735

**STATE OF LOUISIANA**

**VERSUS**

**FREEMAN ERIC TUCKER**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-28863
HONORABLE LALA BRITTAIN SYLVESTER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JONATHAN W. PERRY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Jonathan W. Perry, and Charles G. Fitzgerald, Judges.

Fitzgerald, J., concurs without assigning reasons.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED, IN PART, AND VACATED, IN PART, CASE REMANDED, WITH INSTRUCTIONS.**

**G. Paul Marx**
**Louisiana Appellate Project**
**Post Office Box 82389**
**Lafayette, Louisiana 70598-2389**
**(337) 237-2537**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Freeman E. Tucker**


**Billy Joe Harrington**
**District Attorney, Tenth Judicial District**
**J. Chris Guillet**
**Assistant District Attorney**
**200 Church Street**
**Natchitoches, Louisiana 71457**
**(318) 357-2214**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**PERRY, Judge.**

A unanimous jury convicted Freeman Eric Tucker ("Defendant") of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. For the following reasons, we affirm Defendant's conviction, affirm Defendant's sentence, in part, vacate Defendant's sentence, in part, and remand the matter for a hearing pursuant to La.Code Crim.P. art. 875.1.

## FACTS AND PROCEDURAL HISTORY

On July 16, 2019, Defendant possessed a firearm after having previously been convicted of armed robbery. Defendant was charged by bill of information on August 12, 2019, with aggravated assault, a violation of La.R.S. 14:37; attempted carjacking, violations of La.R.S. 14:27 and La.R.S. 14:64.2; illegal carrying of a weapon, a violation of La.R.S. 14:95; and resisting an officer, a violation of La.R.S. 14:108. On February 11, 2020, the State dismissed the charges of aggravated assault and attempted carjacking. An amended bill of information filed on February 12, 2020, reflected the remaining charges of illegal carrying of a weapon and resisting an officer and added the charge of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. The trial court granted Defendant's pro se motion to quash as to the charges of illegal carrying of a weapon and resisting an officer on February 21, 2020, and the State was ordered to separate the felony from the misdemeanor charges. Another amended bill of information was filed on July 9, 2020, indicating the offenses of illegal carrying of a weapon and resisting an officer were transferred to trial court docket number C28863-1B, leaving the charge of possession of a firearm by a convicted felon.

Trial by jury commenced on April 11, 2022, and Defendant was found guilty of possession of a firearm by a convicted felon on April 12, 2022. On August 29, 2022, Defendant was sentenced to serve twenty years at hard labor without benefit

of probation, parole, or suspension of sentence and to pay a fine of $5,000.00. The trial court ordered the sentence to run consecutively to any parole time. A "Motion for Appeal and Designation of Record" was filed on August 29, 2022, and was granted.

## APPELLANT'S ASSIGNMENTS OF ERROR

Defendant is now before this court alleging two assignments of error regarding his conviction and sentence:

I. The trial court erred in finding that the State met its burden of proving that the arrest of Freeman E. Tucker was based on probable cause. All police knew when they arrested him was that he is a black man and [he] ran away from police when they approached him walking down the street.

II. The trial court erred in giving any weight to an unadjudicated and actually dismissed charge of Attempted Carjacking as evidence in support of a maximum sentence on the offense of conviction.

## APPELLANT'S ARGUMENTS

Defendant argues the trial court erred in finding probable cause existed for his arrest. He alleges that all police knew when they arrested him was that he was a black man and that he ran away from police when they approached him walking down the street.

Defendant also raises the following issues in his second assigned error: 1) the trial court erred in giving any weight to an unadjudicated and dismissed charge of attempted carjacking as evidence in support of a maximum sentence; 2) the $5,000.00 fine is insupportable because he is presumed indigent; 3) the trial court failed to hold a hearing in accordance with La.Code Crim.P. art. 875.1, which mandates a hearing for determination of whether payment in full of the aggregate amount of the fine imposed would cause substantial financial hardship to Defendant or his dependents; and 4) his maximum sentence is excessive.

## APPELLEE'S POSITION

The State argues law enforcement had reasonable suspicion to stop Defendant, and probable cause to arrest him. The State further argues the trial court had sufficient grounds to impose its sentence on Defendant.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is one error patent regarding the trial court's failure to hold a hearing pursuant to La.Code Crim.P. art. 875.1. Since the error has been raised as an issue within Defendant's assignment of error number two, we will address it as such.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant contends the trial court erred in finding that the State met its burden of proving that his arrest was based on probable cause because all police knew when they arrested him was that he was a black man and that he ran away from police when they approached him walking down the street. The State argues officers had reasonable suspicion to stop Defendant and, finding he was armed, had reason to check his criminal history which revealed he was a convicted felon.

Despite these contentions, our review of the proceedings in this matter reveals the legality of Defendant's arrest has been previously considered by this court. A Motion to Suppress was filed on July 17, 2020. Therein, Defendant argued his arrest was illegal and all evidence seized as a result thereof should be suppressed. A hearing on the motion was held on September 22, 2020. Testimony indicated police were dispatched when a woman called 911 and reported that a black male pulled a handgun on her while she was in her car and beat on the window in an attempt to get her to roll down her window. Officer Sean Lodrigue ("Officer Lodrigue") testified

3

he was patrolling in the area nearby when he heard the call from dispatch. Officer Lodrigue recalled dispatch describing the perpetrator as an older black male. Officer Lodrigue later stated he did not recall dispatch saying the man was wearing a suit, and he did not recall how the man was actually dressed. When driving through the area of the reported crime within minutes of receiving the call from dispatch, Officer Lodrigue saw an older black male walking toward him. When the man saw Officer Lodrigue, the man took off running through the grass and went over a fence. Officer Lodrigue subsequently located the man. He yelled through the open car window for the man to stop, and the man took off running again. As Officer Lodrigue, who was now on foot, rounded the last building before an open field, he saw the man on the ground being handcuffed by two officers. According to Officer Lodrigue, reasonable suspicion to suspect the man had been involved in a crime was based on him being a black man who ran for no reason.

Officer Zack McConnell ("Officer McConnell") testified that dispatch described the suspect as a black male in a gray suit. Defendant was a black man wearing jeans, work boots, and a button-down shirt. When asked what articulable facts other than the victim's description he had to detain Defendant, Officer McConnell stated, "Due to the fact that a crime was just committed in the area that Mr. Tucker was walking. And also due to the fact that as officers tried to approach Mr. Tucker to ask him various questions, he then proceeded to take off running from officers." At the time he was apprehended, Defendant possessed a handgun, a taser, and a knife.

The State argued there was ample evidence to detain Defendant, "of course, search incident to arrest." Additionally, Defendant matched the general description of the perpetrator. Moreover, Defendant's flight and jumping over fences were sufficient to justify a reasonable suspicion. Defense counsel argued Defendant did

4

not match the description given by the victim, as he was not wearing a gray suit. The only articulable facts were that Defendant was black, and he ran when he saw police. Moreover, without being told to stop and answer questions, Defendant did nothing wrong by turning and going in a different direction. The trial court subsequently denied the motion to suppress, finding the officers had reasonable suspicion.

Defendant sought supervisory review of the trial court's ruling, arguing the State failed to prove probable cause for an arrest inasmuch as he did not commit a crime in the presence of officers, and the officers did not testify to sufficient articulable facts that amounted to reasonable suspicion because he was walking down the street in the middle of the day in clothing that did not match the description given by dispatch.

This court held:

> **<u>WRIT DENIED</u>:** Defendant seeks review of the trial court's September 22, 2020 denial of his Motion to Suppress. Defendant's writ application failed to include the certification for evidentiary attachments required by Third Circuit Internal Rule 32. Additionally, the **transcript of the preliminary examination** was not introduced at the hearing on Defendant's Motion to Suppress. Therefore, that transcript and any reference to testimony given at that hearing were not considered by this court.
>
> Police had reasonable suspicion to stop Defendant and probable cause to arrest him. *Cf. State v. Greenwell*, 32,249 (La.App. 2 Cir. 8/18/99), 746 So.2d 29; *State v. Price*, 14-127 (La.App. 3 Cir. 6/4/14), 139 So.3d 1259, *writ denied*, 14-1429 (La. 2/6/15), 158 So.3d 815; *State v. Robertson*, 14-612 (La.App. 1 Cir. 11/25/14), 168 So.3d 451. Accordingly, Defendant's writ application is denied.

S*tate v. Tucker*, 20-568 (La.App. 3 Cir. 1/7/21) (unpublished writ ruling) (emphasis added).

In brief to this court, Defendant asserts the application for supervisory writs was not complete because it did not contain the transcript of the hearing on the motion to suppress. Consequently, he alleges this court did not consider the

transcript of the suppression hearing and he argues the law of the case doctrine is, therefore, inapplicable. He urges this court to reconsider its prior ruling in light of the transcript of the motion to suppress and testimony presented at trial. Defendant further argues the lack of specifics in the description of the perpetrator as a black man renders the stop illegal because the generic description did not distinguish him from anyone else. Moreover, the inference that he was the perpetrator overlooked the fact that he was on parole and could have run merely because he possessed a firearm. Defendant addresses Officer McConnell's trial testimony that the complainant described the perpetrator as a black male wearing a gray suit, and Defendant was not wearing a gray suit when he was apprehended. Defendant then sets forth the law regarding investigatory stops and flight but does not connect those statements to his case.

Defendant's suggestion that this court did not consider the transcript of the hearing on the motion to suppress is incorrect. The transcript of the hearing was included in Defendant's writ application, and this court did consider the testimony presented at said hearing. This court, however, did not consider the transcript of the preliminary examination or any argument referencing that hearing because the transcript was not introduced at the hearing on the suppression motion.

When analyzing the issues presented in Defendant's writ application, this court was aware that Officer McConnell testified that dispatch said the suspect was wearing a gray suit and that Defendant was not wearing a gray suit at the time of his arrest. Officer McConnell's trial testimony was not markedly different. Officer McConnell said the complainant described the suspect as a black male wearing a gray suit. However, Officer McConnell testified Defendant had dreadlocks and wore a gray shirt, a tie, jeans, and work boots at the time he was apprehended.

6

When asking this court to revisit the ruling on the motion to suppress, Defendant does not address the testimony of any trial witness other than Officer McConnell and does not argue this court's prior ruling finding police had reasonable suspicion to stop him and probable cause to arrest him was clear error.

As this court explained in *State v. Dickerson*, 14-170, p. 9 (La.App. 3 Cir. 6/4/14), 140 So.3d 904, 909, *writ denied*, 14-1466 (La. 3/13/15), 161 So.3d 638:

> Under the "law of the case" doctrine, prior decisions of the appellate court are considered binding and may not be reconsidered on appeal absent clear error. *Juneau v. State*, 06-1653 (La.App. 3 Cir. 5/2/07), 956 So.2d 728, *writ denied*, 07-1177 (La.9/14/07), 963 So.2d 1004; *State v. Molineux*, 11-275 (La.App. 4 Cir. 10/19/11), 76 So.3d 617, *writ denied*, 11-2556 (La.3/30/12), 85 So.3d 117. "[T]he [law of the case] doctrine is *discretionary* and should not be applied where it would effectuate an obvious injustice or where the former appellate decision was clearly erroneous." *Juneau*, 956 So.2d at 733 (quoting *Trans La. Gas Co. v. La. Ins. Guar. Ass'n*, 96-1477 (La.App. 1 Cir. 5/9/97), 693 So.2d 893, 896) (alternations in original).

Further, in *State v. Dugas*, 21-85, p. 11 (La.App. 3 Cir. 5/11/22) (unpublished opinion), *writ denied*, 22-947 (La. 9/7/22), 345 So.3d 426, it was noted, "[T]his court has continued to apply the doctrine as a discretionary tool of judicial economy . . . . The present case provides another illustration of the need for the use of the doctrine in some form." We further note this court's decision in *Dugas* is supported by the supreme court's statement in *Day v. Campbell-Grosjean Roofing & Sheet Metal Corp.*, 260 La. 325, 330–31, 256 So.2d 105, 107 (1971), "Nevertheless, the law-of-the-case principle is applied merely as a discretionary guide: Argument is barred where there is merely doubt as to the correctness of the former ruling, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice."

After reviewing the arguments put forth by Defendant relating to the circumstances surrounding his arrest and all evidence seized as a result thereof, we

find no error in the prior decision of this court and find no manifest injustice will occur by relying on the ruling in Defendant's writ. We, therefore, decline to revisit the ruling on the motion to suppress.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant challenges his maximum sentence, which includes a $5,000.00 fine. According to Defendant: 1) the trial court erred in giving any weight to an unadjudicated and dismissed charge of attempted carjacking as evidence in support of a maximum sentence; 2) the $5,000.00 fine is insupportable because he is presumed indigent; 3) the trial court failed to hold a hearing in accordance with La.Code Crim.P. art. 875.1, which mandates a hearing for determination of whether payment in full of the aggregate amount of the fine imposed would cause substantial financial hardship to Defendant or his dependents; and 4) his maximum sentence is excessive.

Possession of a firearm by a convicted felon is punishable by imprisonment at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and a fine of not less than $1,000.00 nor more than $5,000.00. La.R.S. 14:95.1(B).

When imposing Defendant's sentence, the trial court stated the following:

This Court has taken notice of and has weighed in its decision today the defendant's social history and his considerable prior criminal record which includes no less than the following serious felony convictions: Simple Burglary, Illegal Possession of Stolen Things, Felony-Grade Theft, two-counts of Armed Robbery, one-count of First-Degree Robbery. This Court also notes that your 1984 conviction of Illegal Possession of Stolen Things was reduced from a charge of Armed Robbery, a violent crime. Mr. Tucker, of your considerable criminal history, this court notes most of all that your first conviction in 1978, when you were 19 years old, you received a probated sentence, in other words, a second chance. To this Court, the purpose of probation is to assist in reducing the incidence and impact of crime by probationers in the community, and that purpose is premised on several core beliefs . . . . To sum it up, probation is a privilege and an opportunity to change. It is clear that not only did you not appreciate the privilege

8

of probation, but probation taught you nothing about the danger you repeatedly placed yourself [sic] by participating in your violent crime. Further, you have shown that you have no sense of individual responsibility. In 1983, after a mere two years of completing your probation for your first conviction, you were charged with Armed Robbery and drug offenses. Pleading down to Illegal Possession of Stolen Things, you received a two-year flat DOC sentence on June 6th, 1984, but before those two years were up, you were arrested for Theft and given yet another two years hard labor. Then, again, before those two years were up, you were arrested and convicted of Armed Robbery and First-Degree Robbery and received a serious sentence of 120 years. In 2017, you somehow got out on parole and, with only two years of parole under your belt and no respect or appreciation for that parole, you pull a gun on an unsuspecting woman in a Natchitoches parking lot knowing you are on parole and putting yourself at risk to return and complete that 120 years. You are now 63 years old; age has not matured you at all to leave your life of violent crime behind you. Most would think that convicted criminals in their sixties would find themselves too old to keep up with violent crime. With you, it's your fountain of youth. Any less of a sentence that [sic] I render today would deprecate the seriousness of not only your crime, but of the danger you are to the public.

The trial court then ordered Defendant to serve twenty years at hard labor without benefit of probation, parole, or suspension of sentence, to run consecutively to his parole time, and to pay a fine of $5,000.00. Defense counsel made a general objection. However, no motion for reconsideration was filed.

In *State v. Barling*, 00-1241, 00-1591, pp. 10–11 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1041–42, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, this court addressed review of a sentence following a general objection and the failure to file a motion for reconsideration:

> The failure to timely file a written motion to reconsider sentence or to orally urge any specific ground for reconsideration at sentencing precludes a defendant from objecting to the sentence imposed. *State v. Moore*, 98-1423 (La.App. 3 Cir. 3/3/99); 734 So.2d 706. *See also State v. King*, 95-344 (La.App. 3 Cir. 10/4/95); 663 So.2d 307, *writ denied*, 95-2664 (La.3/15/96); 669 So.2d 433. La.Code Crim.P. art. 881.1 (emphasis added) serves as the basis for this restriction and provides, in pertinent part:
>
> > A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court

9

> may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
>
> (2) The motion shall be oral at the time of sentencing or in writing thereafter *and shall set forth the specific grounds on which the motion is based.*
>
> . . . .
>
> D. Failure to make or file a motion to reconsider sentence *or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.*

> In cases where courts have held that an oral objection alone is sufficient to preserve the issue for review, the oral objection contained the basis for the motion, such as excessiveness of sentence. *See State v. Caldwell*, 620 So.2d 859 (La.1993); *State v. Trahan*, 98-1442 (La.App. 4 Cir. 12/1/99); 752 So.2d 921. Therefore, since Defendant's oral motion did not set forth any specific grounds to support his claim of excessive sentences, we are relegated to a bare claim of excessiveness. *State v. Mims*, 619 So.2d 1059 (La.1993), *after remand*, 626 So.2d 856 (La.App. 2 Cir.1993), *writ denied*, 93-2933 (La. 2/11/94); 634 So.2d 373.

Because defense counsel entered a general objection, this court is relegated to a bare claim of excessiveness. Thus, Defendant waived review of his claim that the trial court erred in giving any weight to an unadjudicated and dismissed charge of attempted carjacking as evidence in support of a maximum sentence.

> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*Barling*, at 1042–43 (alteration in original).

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

As for the nature of the offense, Defendant was convicted of being a felon in possession of a firearm. "It is unlawful for any person who has been convicted of . . . a crime of violence as defined in R.S. 14:2(B) which is a felony . . . to possess a firearm or carry a concealed weapon." La.R.S. 14:95.1(A). Defendant was previously convicted of armed robbery, which is a crime of violence as well as a felony. *See* La.R.S. 14:2(A)(4) and (B)(21); 14:64.

> [Louisiana Revised Statutes 14:95.1] was passed in the interest of the public and as an exercise of the police power vested in the legislature. Its purpose is to limit the possession of firearms by persons who, by their past commission of certain specified serious felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity. *State v. Amos*, 343 So.2d [166] at 168 [(La.1977)].

*State v. Eberhardt*, 13-2306, 14-209, pp. 10–11 (La. 7/1/14), 145 So.3d 377, 384. In addition to the firearm, Defendant possessed a taser and a knife at the time he was apprehended.

As for the circumstances of the offender, Defendant was nineteen years old when he began committing crimes and is now sixty-three years old. Defendant has twice been on parole and committed crimes before his parole was completed. Furthermore, Defendant is considered a fourth-felony offender and has a history of committing violent crimes.

This court discussed similar sentences in *State v. Charles*, 20-498, pp. 18–21 (La.App. 3 Cir. 5/5/21), 318 So.3d 356, 366–67 (alteration in original), noting that in 2010 La. Acts No. 815, § 1 the legislature increased the maximum sentence in La.R.S. 14:95.1 from fifteen to twenty years:

> Generally, maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Delaughter*, 29,974 (La.App. 2 Cir. 12/10/97), 703 So.2d 1364, *writ denied*, 98-18 (La. 5/1/98), 805 So.2d 201, *abrogated in part on other grounds by State ex rel. Olivieri v. State*, 00-172, 00-1767 (La. 2/21/01), 779 So.2d 735, *certs denied*, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001) and 534 U.S. 892, 122 S.Ct. 208, 151 L.Ed.2d 148 (2001). Our review of comparative cases reveals that similar sentences to Defendant's have been imposed for similar cases and offenders.
>
> In *State v. Jones*, 01-539 (La.App. 3 Cir. 10/31/01), 799 So.2d 772, *writ denied*, 01-3310 (La. 12/13/02), 831 So.2d 975, the defendant argued his maximum sentence for possession of a firearm by a felon, fifteen years at hard labor without benefit of probation, parole, or suspension of sentence, the maximum sentence at that time, and the minimum fine of $1,000.00, was excessive. The trial court noted defendant had seven previous convictions, five of which were felonies; found there was an undue risk of defendant committing a crime if not incarcerated; noted the defendant had no remorse; and that a lesser sentence would deprecate the seriousness of the crime. This court found no error in the sentence, considering defendant's five prior felony convictions and the nature of his latest conviction.
>
> In *State v. Caffrey*, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, *writ denied*, 09-1305 (La. 2/5/10), 27 So.3d 297, the defendant was sentenced to fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence, the maximum sentence at that time, for possessing a firearm as a convicted felon. The defendant argued that he was not the worst type of offender and that he only had one prior conviction for possession of cocaine. In denying reconsideration of the sentence, the trial court noted the gun in question was fully loaded, defendant had a "less than cooperative attitude" throughout trial and sentencing, and defendant was "less than remorseful with regard to his actions." *Id.* at 204. The fifth circuit found that the sentence was not constitutionally excessive, taking into account the defendant's prior conviction for possession of cocaine and his guilty pleas to possession of cocaine and possession of marijuana on the same date that he pled guilty to being a felon in possession of a firearm.
>
> In *State v. Warmack*, 07-311 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, the fifth circuit upheld a fifteen-year sentence, again the maximum sentence at that time, for the defendant's possession of a

firearm by a convicted felon. The defendant had three prior convictions for various drug offenses. Additionally, the defendant ran from the police, and the gun he possessed was fully loaded.

In *State v. Contreras*, 17-735 (La.App. 4 Cir. 5/30/18), 247 So.3d 858, *writ denied*, 18-1172 (La. 12/17/18), 259 So.3d 341, the defendant received a twenty-year sentence without benefit of probation, parole, or suspension of sentence, plus a $1,000.00 fine for possession of a firearm by a convicted felon. The defendant claimed the sentence was excessive. In a footnote, the fourth circuit stated:

> Because the statutory maximum changed in 2011 from fifteen years to twenty years, there is a lack of jurisprudence where the defendant was sentenced to the maximum of twenty years but considerable case law [exists] upholding the maximum sentence of fifteen years for felon in possession of a firearm where the defendant has prior convictions. *See State v. Crawford*, 03-1494 (La. App. 5 Cir. 4/27/04), 873 So.2d 768 (the defendant had previous convictions for crimes of violence and a propensity for recidivism, and thus the trial judge did not abuse his discretion in imposing the maximum sentence on the defendant); *State v. Taylor*, 2004-689 (La. App. 5 Cir. 12/14/04), 892 So.2d 78 (the defendant had numerous felony convictions and the trial court did not abuse its discretion in imposing the maximum fifteen-year sentence).

*Id.* at 872 n.6. The fourth circuit concluded that this defendant's maximum sentence was not excessive.

In *State v. Abram*, 32,627 (La.App. 2 Cir. 10/27/99), 743 So.2d 895, 903, *writ denied*, 00-121 (La. 9/29/00), 769 So.2d 549, the defendant received a fifteen-year sentence, the maximum sentence then available, for possession of a firearm by a convicted felon. The trial court noted that the defendant had amassed an extensive criminal record. Upon reviewing the defendant's lengthy criminal history, the trial court felt that any lesser sentence would deprecate the seriousness of the offense. The second circuit found that in consideration of defendant's criminal history, the defendant's sentence was not an abuse of the trial court's discretion and did not shock the court's sense of justice.

The court affirmed Charles's twenty-year sentence, noting he was forty-five years old, had five felony convictions, and was approached by police because there was a warrant for his arrest.

Having reviewed the record and the sentences imposed in similar cases, we find Defendant's twenty-year sentence is not unconstitutionally excessive.

Defendant's final arguments are that the trial court erred in failing to conduct a hearing in accordance with La.Code Crim.P. art. 875.1, which he suggests cannot be waived. Defendant further asserts the $5,000.00 fine is insupportable because he is presumed indigent when incarcerated, a fact of which Defendant suggests this court can take judicial notice.

Louisiana Code of Criminal Procedure Article 875.1 (emphasis added) provides:

> A. The purpose of imposing financial obligations on an offender who is convicted of a criminal offense is to hold the offender accountable for his action, to compensate victims for any actual pecuniary loss or costs incurred in connection with a criminal prosecution, to defray the cost of court operations, and to provide services to offenders and victims. These financial obligations should not create a barrier to the offender's successful rehabilitation and reentry into society. *Financial obligations in excess of what an offender can reasonably pay undermine the primary purpose of the justice system which is to deter criminal behavior and encourage compliance with the law. Financial obligations that cause undue hardship on the offender should be waived, modified, or forgiven.* Creating a payment plan for the offender that is based upon the ability to pay, results in financial obligations that the offender is able to comply with and often results in more money collected. Offenders who are consistent in their payments and in good faith try to fulfill their financial obligations should be rewarded for their efforts.
>
> B. For purposes of this Article, "financial obligations" shall include any *fine*, fee, cost, restitution, or other monetary obligation authorized by this Code or by the Louisiana Revised Statutes of 1950 and imposed upon the defendant as part of a criminal sentence, incarceration, or as a condition of the defendant's release on probation or parole.
>
> C. (1) Notwithstanding any provision of law to the contrary, *prior to ordering the imposition or enforcement of any financial obligations as defined by this Article, the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents.* The court may consider, among other factors, whether any victim of the crime has incurred a substantial financial hardship as a result of the

14

criminal act or acts and whether the defendant is employed. The court may delay the hearing to determine substantial financial hardship for a period not to exceed ninety days, in order to permit either party to submit relevant evidence.

(2) *The defendant or the court may waive the judicial determination* of a substantial financial hardship required by the provisions of this Paragraph. *If the court waives the hearing on its own motion, the court shall provide reasons, entered upon the record, for its determination that the defendant is capable of paying the fines*, fees, and penalties imposed *without causing a substantial financial hardship*.

D. (1) If the court determines that payment in full of the aggregate amount of all financial obligations imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents, the court shall do either of the following:

(a) Waive all or any portion of the financial obligations, except as provided in Paragraph E of this Article.

(b) Order a payment plan that requires the defendant to make a monthly payment to fulfill the financial obligations.

(2)(a) The amount of each monthly payment for the payment plan ordered pursuant to the provisions of Subsubparagraph (1)(b) of this Paragraph shall be determined by the court after considering all relevant factors, including but not limited to the defendant's average gross daily income for an eight-hour work day.

(b) If the court has ordered restitution, half of the defendant's monthly payment shall be distributed toward the defendant's restitution obligation.

(c) Except as provided in Paragraph E of this Article, during any periods of unemployment, homelessness, or other circumstances in which the defendant is unable to make the monthly payment, the court or the defendant's probation and parole officer is authorized to impose a payment alternative, including but not limited to substance abuse treatment, education, job training, or community service.

(3) If, after the initial determination of the defendant's ability to fulfill his financial obligations, the defendant's circumstances and ability to pay his financial obligations change, the state, the defendant, or the defendant's attorney may file a motion with the court to reevaluate the defendant's circumstances and determine, in the same manner as the initial determination, whether a modification of the monthly financial obligation imposed pursuant to this Article is appropriate under the circumstances.

E. Notwithstanding any other provision of this Article or any other provision of law to the contrary, a court may not waive nor forgive

restitution due to a crime victim unless the victim to whom restitution is due consents to such an action.

F. If, at the termination or end of the defendant's term of supervision, any restitution ordered by the court remains outstanding, the balance of the unpaid restitution shall be reduced to a civil money judgment in favor of the person to whom restitution is owed, which may be enforced in the same manner as provided for the execution of judgments in the Code of Civil Procedure. For any civil money judgment ordered under this Article, the clerk shall send notice of the judgment to the last known address of the person to whom the restitution is ordered to be paid.

G. The provisions of this Article shall apply only to defendants convicted of offenses classified as felonies under applicable law.

H. Notwithstanding any provision of this Article or any other law to the contrary, *if the financial obligations imposed upon a defendant would cause substantial financial hardship to the defendant or his dependents, the court shall not order that the defendant be incarcerated for his inability to meet those financial obligations.* This provision shall apply to defendants convicted of traffic offenses, misdemeanor offenses, or felonies under applicable law.

This version of La.Code Crim.P. art. 875.1 became effective on August 1, 2022, shortly before Defendant was sentenced on August 29, 2022. We find Defendant's claim that the hearing provided for could not be waived is based on a prior version of La.Code Crim.P. art. 875.1(C) (emphasis added),[1] which provided:

---

[1] Louisiana Code of Criminal Procedure Article 875.1 was enacted by 2017 La. Acts No. 260 and § 3 set forth an effective date of August 1, 2018. The effective date was extended to August 1, 2019, by 2018 La. Acts No. 668, §§ 4, 6. *See also* 2018 La. Acts No. 137. 2019 La. Acts No. 253, § 2 stated that it amended 2017 La. Acts No. 260, § 3 as amended by 2018 La. Acts Nos. 137 and 668 to provide for an effective date of August 1, 2021. Act 253 amended La.Code Crim.P. art. 885.1, which provides for the suspension of driving privileges. However, in 2020 House Concurrent Resolution 2, the legislature said Article 875.1 became effective on August 1, 2019, inasmuch as 2019 La. Acts No. 253 inadvertently did not amend the effective date of the changes made to Article 875.1 by 2018 La. Acts No. 668. The legislature went on to suspend the provisions of Article 875.1, with the suspension lasting from May 31, 2020, through August 1, 2021. (A concurrent resolution suspending a law has the force and effect of law. *See* La.Const. art. 3, § 20; *Louisiana Chem. Ass'n v. State through Louisiana Dep't of Revenue*, 16-501, p. 11 (La.App. 1 Cir. 4/7/17), 217 So.3d 455, 463, *writ denied*, 17-761 (La. 9/22/17), 227 So.3d 826.) In 2021 La. Acts No. 313, the legislature enacted La.Code Crim.P. art. 875.2 with an effective date of August 1, 2022, and further stated:

Section 2. Code of Criminal Procedure Article 875.1 is hereby repealed in its entirety.

Section 3. (A) Notwithstanding Section 3 of Act No. 260 of the 2017 Regular Session or any other Act to the contrary, the provisions of Act No. 260 of

C. (1) Notwithstanding any provision of law to the contrary, prior to ordering the imposition or enforcement of any financial obligations as defined by this Article, *the court shall determine* whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents.

(2) The defendant *may not waive the judicial determination* of a substantial financial hardship required by the provisions of this Paragraph.

*See also State v. Jarratt*, 53,525 (La.App. 2 Cir. 6/24/20), 299 So.3d 1202.

Although Defendant committed his offense before the version of La.Code Crim.P. art. 875.1 took effect on August 1, 2022, Article 875.1 is a procedural statute that applies to all actions subsequent to its effective date. *See State v. Brossette*, 163 La. 1035, 113 So. 366 (1927). This conclusion is supported by *Jarratt* and *State v. Smith*, 53,827 (La.App. 2 Cir. 3/3/21), 315 So.3d 407.

In *Jarratt*, the second circuit discussed La.Code Crim.P. art. 875.1, noting the defendant was sentenced on September 9, 2019, and La.Code Crim.P. art. 875.1 became effective August 1, 2019. Thus, it was applicable to Jarratt's case.

---

the 2017 Regular Session shall become effective on August 1, 2022, except as provided by Subsection B of this Section.

(B) It is the intent of the legislature that the provisions of Act No. 260 of the 2017 Regular Session that enacted Code of Criminal Procedure Article 875.1 and that amended and reenacted Code of Criminal Procedure Article 885.1(A), (C), and (D) and 894.4 shall never become effective.

. . . .

Section 5. (A) The provisions of Sections 1 and 2 of this Act shall become effective on August 1, 2022.

(B) The provisions of Sections 3, 4, and this Section of this Act shall become effective on August 1, 2021.

2022 La. Acts No. 219 § 1 amended and reenacted Article 875.1 and invalidated the enactment of La.Code of Crim.P. art. 875.2 and the repeal of Article 875.1. Due to the language of 2019 La. Acts No. 253, § 2; House Concurrent Resolution 2; and 2021 La. Acts No. 313, §§ 3 and 5, we shall not discuss whether La.Code Crim.P. art. 875.1 became effective on August 1, 2019, or if it was effective between August 1, 2021, and August 1, 2022.

In *Smith*, the second circuit again found La.Code Crim.P. art. 875.1 was applicable, noting Smith had been sentenced on November 7, 2019. Smith's attorney objected to the sentence but did not file a motion to reconsider sentence. The second circuit reviewed the sentence for constitutional excessiveness. The court went on to consider Smith's claim that the restitution imposed was not supported by the record and, despite Smith's failure to raise the issue, the court noted that La.Code Crim.P. art. 875.1 was applicable to the case.

This court has also considered sentencing issues not raised in an objection or motion to reconsider sentence. For example, in *State v. Ross*, 18-453 (La.App. 3 Cir. 3/13/19), 269 So.3d 1052, *writ denied*, 19-581 (La. 1/22/20), 291 So.3d 1041, this court addressed Ross's claim that the trial court's order of restitution was not supported by the record even though Ross's motion to reconsider sentence asserted only a general excessiveness claim.

Based on the purpose of La.Code Crim.P. art. 875.1, as set out in subsection (A) thereof, and the cases set forth above, we find Defendant need not object on the basis that the trial court failed to comply with La.Code Crim.P. art. 875.1 or include such a claim in a motion to reconsider sentence to preserve the matter for review on appeal. Moreover, this court may review Defendant's claims as to the $5,000.00 fine in the interest of justice. *See* Uniform Rules—Courts of Appeal, Rule 1–3.

This court must also discuss waiver of the determination provided for in La.Code Crim.P. art. 875.1. At the time *Jarratt* and *Smith* were decided, the judicial determination of financial hardship could not be waived. As of August 1, 2022, the determination may now be waived by a defendant or the trial court. A waiver by the trial court must be made on the record. The article does not declare that a defendant's waiver must be made of record. However, we believe that to allow an implied waiver by a defendant would be contrary to the stated purpose of the article. We find

guidance in *Bearden v. Georgia*, 461 U.S. 660, 672–73, 103 S.Ct. 2064, 2073 (1983) (emphasis added), in which the Supreme Court placed the burden on the court to inquire as to a defendant's failure to pay restitution:

> We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, *a sentencing court must inquire* into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

Furthermore, courts have not put the onus on a defendant to raise his indigency when default time has been imposed pursuant to La.Code Crim.P. art. 884, which requires the trial court to impose a specific term of imprisonment when it imposes a fine or costs that are not paid.[2] The issue has been considered an error patent:

> The record indicates that Defendant is indigent. During the pre-plea, guilty plea, and sentencing proceedings, he was represented by a court-appointed attorney; and, on appeal, he is represented by the Louisiana Appellate Project. This court finds these facts are presumptive evidence of indigence. *See State v. Jones*, 535 So.2d 3 (La.App. 4 Cir.1988). Although we are amending the sentence to delete the fine and payment to the Public Defender's Office, the order to pay $150.00 costs for the crime lab (presumably court costs) still remains.[3] Therefore, we likewise delete the portion of the sentence providing for a jail term in the event of default of payment of costs. The trial court is instructed to note the amendment in its court minutes.

---

[2] Louisiana Code of Criminal Procedure Article 884 now provides that its provisions do not apply if the court has determined, pursuant to La.Code Crim.P. art. 875.1, that payment in full of the aggregate amount of all financial obligations imposed upon a defendant would cause substantial financial hardship to the defendant or his dependents.

[3] The fine and payment to the Public Defender's Office were illegal.

*State v. Belton*, 11-948, pp. 4–5 (La.App. 3 Cir. 3/7/12), 88 So.3d 1159, 1162. *See also State v. Duke*, 11-688 (La.App. 3 Cir. 2/1/12), 84 So.3d 722, *writ denied*, 12-373 (La. 9/21/12), 98 So.3d 324; *State v. Jackson*, 53,497 (La.App. 2 Cir. 5/20/20), 296 So.3d 1156; *State v. George*, 94-2215 (La.App. 4 Cir. 4/26/95), 654 So.2d 813, *writ denied*, 95-1221 (La. 10/13/95), 661 So.2d 495.

For the reasons discussed, we find Defendant was entitled to a hearing pursuant to La.Code Crim.P. art. 875.1 prior to imposition of the fine.

Defendant also claims that his $5,000.00 fine is insupportable because he is presumed indigent due to his incarceration, and this court can take judicial notice of his indigency. Courts have found representation by court-appointed counsel and the Louisiana Appellate Project as presumptive evidence of indigency when deleting default time. *See Belton*, 88 So.3d 1159. However, in *State v. Dickerson*, 579 So.2d 472, 483 (La.App. 3 Cir.), *writ granted in part on other grounds*, 584 So.2d 1140 (La.1991), this court stated: "[W]e find that the trial court's imposition of a fine upon the indigent defendant in this case, which did not provide for a jail term in the event of default of payment of the fine, is not excessive and is not an illegal sentence." Additionally, in *State v. Williams*, 598 So.2d 708, 710 (La.App. 5 Cir.), *writ denied*, 604 So.2d 996 (La.1992), the fifth circuit stated, "The defendant's further contention that an indigent may not be sentenced to pay a fine and costs, however, is an inaccurate statement of law. An indigent defendant may not be sentenced to *additional* jail time for failure to pay a fine or costs." Thus, we find Defendant's contention that imposition of a fine is illegal because he is indigent to be without merit.

Before imposition of the $5,000.00 fine, the trial court should have held a hearing pursuant to La.Code Crim.P. art. 875.1 to determine Defendant's ability to pay a fine. Because a hearing was not held, we vacate the $5,000.00 fine and we

20

remand the matter to the trial court for the required hearing. We do not find the twenty-year sentence should be vacated inasmuch as the sentence is not excessive and the sentence cannot be increased in lieu of Defendant's inability to pay a fine.

## DECREE

Defendant's conviction is affirmed. Defendant's sentence is affirmed, in part, as to his sentence of twenty years at hard labor, and vacated, in part, as to the fine imposed. We remand this case for a hearing pursuant to La.Code Crim.P. art. 875.1 to determine Defendant's ability to pay a fine.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED, IN PART, AND VACATED, IN PART, CASE REMANDED, WITH INSTRUCTIONS.**